**LINDSEY BROS., a Partnership,
Plaintiff,**

v.

**C. B. JONES, Fred W. Koch, and John H. Simpson, Marketing Quota Review Committee, United States Department of Agricultural Stabilization and Conservation Service, Defendants.**

**No. H 66 C–43.**

United States District Court
E. D. Arkansas, E. D.

Aug. 18, 1967.

E. J. Butler, Forrest City, Ark., for plaintiff.

Walter G. Riddick, Asst. U. S. Atty., Little Rock, Ark., for defendants.

## MEMORANDUM OPINION

OREN HARRIS, Chief Judge.

This cause of action is an appeal by the plaintiff, Lindsey Bros., a partnership, seeking a review of the administrative action of the Marketing Quota Review Committee, United States Department of Agricultural Stabilization and Conservation Service, under the Agricultural Adjustment Act of 1938, as amended (7 U.S.C.A. § 1281 et seq.).

The questions involved with this appeal results from the action of the St. Francis County A.S.C. Committee in connection with cotton allotment by the County Committee to the plaintiff under Farm Contract No. E–322, 1964.

The County Committee proposed to assess a penalty against the plaintiff for non-compliance. The plaintiff appealed to the defendant, Marketing Quota Review Committee, composed of the defendants, C. B. Jones, F. W. Koch and John H. Simpson. The Review Committee conducted a hearing on the former action September 7, 1966, and issued it's decision on September 23, 1966, upholding the action of the County Committee.

The plaintiff filed a complaint in the Chancery Court of St. Francis County, Arkansas, seeking a review of the decision of the Review Committee (7 U.S. C.A. § 1365).

A timely motion by the Government was filed with due notice removing the case from the State Court to the United States District Court (28 U.S.C.A. § 1441).

Jurisdiction of this Court is specifically provided by 7 U.S.C.A. § 1365.

■■ Review of the administrative record by the Court is limited to questions of law and the finding of fact by the Review Committee is conclusive if supported by substantial evidence. It is not the function of this Court to substitute it's judgment for that of the Review Committee if there is substantial evidence to support the Committee's conclusions. 7 U.S.C.A. § 1366; Chandler v. David, 350 F.2d 669 (5 Cir. 1965), cert. denied 382 U.S. 977, 86 S.Ct. 548, 15 L.Ed.2d 469. Review Committee, Venue VII, etc. v. Willey, 275 F.2d 264, 273 (8 Cir. 1960); Gladney v. Review Committee, D.C., 257 F.Supp. 57.

However, in considering the questions of law and application thereof, a review of the facts is appropriate.

The Plaintiff, Lindsey Bros., is the operator of a farm in St. Francis County, Arkansas. It is identified by the County

Agricultural Stabilization and Conservation (ASC) Office as Farm E–322.

Under the Agricultural Adjustment Act of 1938, as amended, 7 U.S.C.A. § 1281 et seq., the A.S.C. County Committee made a cotton allotment of 550 acres to the plaintiff for the crop year 1964. The plaintiff was notified by the County Committee of such allotment on Form MQ–241, December 5, 1963. 7 U.S.C.A. § 1362. The plaintiff applied for additional acreage from release and reapportionment acreage and was allotted an additional 17 acres, or a total of 567 acres for the crop year 1964. The A.S.C. Committee notified the plaintiff of the additional 17 acres on Form MQ–30 May 5, 1964.

On June 15, 1964, Neil Peevey, a performance reporter for St. Francis County Committee checked compliance of this farm on Form A.S.C. 578 in accordance with regulations governing acreages and compliance determinations, 28 F.R. 8117. It showed thirty-one fields of cotton planted under this Contract E–322. It was determined by Mr. Peevey that the plaintiff had a total planted acreage of 593.3 acres, an excess acreage of 23.3 acres of cotton.

Notice of the excess acreage was mailed to the plaintiff July 31, 1964, by the County Committee, which resulted in the disking and plowing-in of the excess acreage by the plaintiff.

Subsequently, the farm was again checked by Mr. Danehower, another performance reporter of the County A.S.C. Committee to determine if the excess acreage had been destroyed. He determined the excess acreage had been plowed-up and destroyed. As a result of this action by Mr. Danehower and his report, a notice was mailed by the A.S.C. County Committee to the plaintiff on September 4, 1964, showing the farm in compliance with a planted acreage of 566.5 acres of cotton.

With this notice that the farm was in compliance the St. Francis County A.S.C. Office issued to plaintiff their regular *Farm Marketing Card* for harvesting and marketing of the cotton.

Under this determination of compliance and pursuant to the authorization of the A.S.C. County Committee the plaintiff proceeded to harvest the cotton. With the exception of a part of a 40-acre tract, the cotton acreage had all been harvested when two crop reporters, S. W. Chun and Andrew Rowlett, by the direction of the County Committee, rechecked and remeasured the cotton planted on the farm commencing October 31, 1964, to November 4, 1964. These performance reporters determined and reported a planted acreage totalling 624.9 acres of cotton. From their recheck and remeasurement of these dates, October 31 to November 4, 1964, these reporters also determined that only 8.86 acres had been destroyed and that there was an excess acreage over and above the cotton allotment of 567 acres of 49.1 acres planted.

On November 6, 1964, a notice was mailed to the plaintiff by the County Committee that the plaintiff had until November 13 to adjust the acreage. A letter from the County Committee was sent with the notice to the plaintiff to the effect that if he had cotton not harvested that he could destroy, he would be required to plow-up and destroy 49.1 acres of cotton determined by these performance reporters to be in excess and that he would be required to pay the reporters for their time spent on the farm checking the plow-up, together with the regular plow-up charges.

The certified record of the administrative review before the Review Committee reveals that the performance reporters used the County Committee's aerial photos with their personal observations of each field to outline the acreage of the field from which a determination of the actual acres was made by what is referred to as "Planimeter" in the office of the A.S.C. County Committee. There was a minimum of actual chain-measured acres by the performance reporters. When asked why each field was not chain-measured the reporter replied, "Well, sir, if we chained every field there, we'd still be there."

The record of the hearing further reveals that the performance reporters reported that at the time in November that they rechecked and remeasured the farm there was some unharvested cotton. When Mr. Chun was asked if he knew the total acreage shown to be unharvested he replied, "No, sir, I don't know."

During the course of the hearing by the Review Committee the plaintiff, Billy Lindsey, testified that at the time the performance reporters checked the farm, October 31, to November 4, there was less than 40 acres of unharvested cotton, "not enough to satisfy their demand for plow up on it that hadn't been picked." This statement is undisputed.

The plaintiff producer took no action pursuant to the latter notice dated November 6, 1964, and November 20, 1964, the A.S.C. County Committee mailed a notice on Form MQ–93–Cotton advising of a penalty due on excess acreage in the sum of $5,519.02.

Upon receipt of such notice, the plaintiff made timely application under date of December 3, 1964, for a review by a Review Committee of the farm marketing excess and attendant penalty assessed by the County Committee through its notice of November 20, 1964. 7 U.S.C.A. § 1363.

The Court has the benefit of the record of hearing conducted by the Review Committee on September 7, 1966, and the notice of determination the Review Committee issued to the plaintiff on September 23, 1966, affirming the decision of the County Committee and assessment of penalty. Within the 15 days provided by 7 U.S.C.A. § 1365 this action was instituted for a judicial review of the decision of the Review Committee.

In addition to the record of the hearing conducted by the Review Committee, the Court has the benefit of briefs filed by the parties in support of their respective positions. The facts material to the questions involved in this proceeding are not in dispute.

The primary issue in the case is whether the Secretary of Agriculture or a regular established component of the Department of Agriculture (County A.S.C. Committee) under applicable statutes and regulations can alter a cotton allotment and compliance determination which has become final and binding as to the producer after the producer has substantially complied with the program.

Under the Agricultural Adjustment Act of 1938, as amended, provision is made for a national marketing quota, a proclamation, amount of cotton acreage to be planted and date of proclamation. 7 U.S.C.A. § 1342. The purpose of the Agricultural Program is contained in the declaration of policy by Congress in the original Act of 1938 and supplemented in subsequent acts from time to time. 7 U.S.C.A. § 1281 et seq.

The Congress provided that the program shall be voluntary among the farmers determined by a referendum conducted by the Secretary of Agriculture. Two-thirds of the farmers engaged in the production of cotton in the calendar year in which the referendum is held must vote by secret ballot to effectuate the program. 7 U.S.C.A. § 1343.

On approval by two-thirds of the farmers engaged in the production of cotton, apportionment of acreage allotments on a national basis is determined for the crop of cotton to be produced the following calendar year. Provision is made for apportionment among the states with adjustments and a national acreage reserve to meet hardship and other needs. The state acreage allotment for cotton is then apportioned to the counties, which in turn makes an allotment to farms within the county. Such allotment becomes binding on the producer. 7 U.S.C.A. § 1344.

Penalties are provided for failure to comply when farm marketing quotas are in effect with respect to any crop of cotton. All cotton produced on a farm and marketed is subject to the penalty and a lien on the entire crop of cotton produced on the farm shall be in effect

in favor of the United States. 7 U.S.C.A. § 1346.

Through various statutes and numerous regulations adopted by the Secretary of Agriculture, the Soil Conservation and Domestic Allotment Program which inter alia provided farm marketing quotas for cotton, loans, parity payments and other benefits have been administered through the County Agricultural Stabilization and Conservation Committees for many years.

There have been adjustments in the programs by amendments to the statutes and regulations which of necessity caused variance in some degree from year to year. The only concern in this proceeding is the determination of cotton allotment to the plaintiff's farm as identified by Contract E–322 for the calendar year 1964.

The questions of law presented in this case as to the authority of the Secretary of Agriculture and the administrative committees under the applicable statutes and regulations were recently considered by the United States Court of Appeals for the Eighth Circuit in United States of America v. Kopf et al., 379 F.2d 8 (June 28, 1967). That case was concerned with corn acreage allotments, acres diverted and the yield for the years of 1962 and 1963. In that case as it is with this case, the plaintiffs were in compliance determined by the action of the County A.S.C. Committee.

There was timely appeal and relief denied more than two years after the 1962 yield had been redetermined and more than one year after the yield had been fixed for 1963.

In the instant case the allotment for the farm had been redetermined by the County Committee. A notice to this effect was mailed to the farmer September 4, 1964. The proceeding by which the County Committee acted was authorized by the statutes and regulations and there is no contention that the action of the County Committee did not conform to the act and regulations thereto. No appeal was taken by the producer on the redetermination of compliance September 4, 1964, and the decision was final as to him. United States of America v. Kopf, et al., supra; Gajcwski v. United States, 8 Cir., 327 F.2d 239, 242; Weir v. United States, 8 Cir., 310 F.2d 149, 157.

It is the contention of the plaintiff that the allotment determination as shown by the County Committee notice of September 4, 1964, are final and the subsequent decision holding the farmer in non-compliance was erroneous. 7 U.S.C.A. § 1385 provides:

"The facts constituting the basis for any payment under the Soil Conservation and Domestic Allotment Act, as amended, parity payment, payment under section 1339 of this title, loan, or price support operation, or the amount thereof, when officially determined in conformity with the applicable regulations prescribed by the Secretary or by the Commodity Credit Corporation, shall be final and conclusive and shall not be reviewable by any other officer or agency of the Government. * * "

It is the opinion of the Court that such statute applies to the factual situation in this case.

"Fairness requires that a decision final as to one party should also be final as to the other, absent clear statutory authority to the contrary. Section 1385 accomplishes this objective." United States of America v. Kopf et al., supra.

The Government contends that the findings of an erroneous notice under Section 718.110(b), Regulations Governing Acreage and Compliance Determination, are prevailing. The Court does not agree since there is no showing that the County Committee's determination of compliance was not in strict accord with the regulations.

The Government admits the good faith of the farm operator with reference to the alleged erroneous notice of measured acres; the Government admits that the alleged incorrect notice was the result of an error made by the compliance reporter or by other employees of the Coun-

ty and State offices; the Government admits that neither the farm operator nor any producer on the farm was in any way responsible for the error.

The Government contends that the farm operator or producer had actual knowledge of the error in time to adjust the excess acreage as determined November 6, 1964, and that the alleged error was such that the farm operator should have reasonably questioned the acreage determined on September 4, 1964. Thus the Government assumes the position that under the above regulation the Secretary has the power to change a determination after performance has been started and almost completed. In the Kopf case, supra, the Court answered this contention, as follows:

"The Court finds it hard to believe that such a situation was ever intended by Congress or by the Secretary. It is inconceivable that the offers on Forms 471 were not at least meant to become a binding unilateral contract on the part of the Government once a participating farmer had started performance. Any other position would place the farmer at the complete mercy of the government. If the government's position was accepted it is unlikely that any farmer would ever enter into such a program."

This Court agrees with the statement as applicable to this case. It is exceedingly doubtful that the farmers would ever approve farm marketing quotas in a referendum should such a rule be adopted. It would be wholly inconsistent with the provisions of the governing statutes and regulations.

The decision of the County Committee determining the farm in compliance September 4, 1964, which became binding was not questioned for some two months. During this time the cotton was substantially harvested and marketed. It was almost two years after the harvesting and marketing of the cotton by authority of the County A.S.C. Committee before the Review Committee made it's decision (September 23, 1966) to deny relief under the statute. 7 U.S.C.A. § 1363.

Again in the Kopf case, supra, the Court commented that "despite the long period of time farm programs have been in effect no authority is cited or found supporting the Government's position that it may open up a factual determination at any time, however remote. Such position is inconsistent with all rules of administrative and judicial procedure".

■ It is a well settled rule that an administrative agency such as an A.S.C. County Committee cannot retroactively revise allotments without a grant of such powers by Congress.

Gladney v. Review Committee, 257 F. Supp. 57, 60–61, holds:

"It seems well settled that the County Committee, as an administrative agency, cannot retroactively revise allotments without an express congressional grant of such power. Civil Aeronautics Board v. Delta Air Lines, 367 U.S. 316, 81 S.Ct. 1611, 6 L.Ed.2d 869 (1961); United States v. Seatrain Lines, 329 U.S. 424, 67 S.Ct. 435, 91 L.Ed. 396 (1947); Pan American Petro. Corp. v. Pierson, 284 F.2d 649 (10 Cir. 1960), cert. denied 366 U.S. 936, 81 S.Ct. 1661, 6 L.Ed.2d 848.

\* \* \* \* \* \*

"Since in this case there was no appeal filed from the revised determination of 1964 or the original determinations of 1965 and 1966, and there is obviously no issue of fraud or misrepresentation, the determinations were final as to both the administrative agency and the farmer." United States of America v. Kopf, supra.

■ There was no appeal filed in this case from the revised determination of September 4, 1964. The cotton crop was virtually harvested and marketed before any question was raised. The Review Committee delayed a hearing until September 7, 1966, and its decision until September 23, 1966, over two years later. There is no contention of fraud or misrepresentation, therefore, the determination of compliance September 4, 1964, was final as to both the administrative agency

and the farmer. Gladney v. Review Committee, supra.

It is strongly contended by the Government that the action of the County Committee is subject to the general supervision and direction of the State Committee. 7 C.F.R. 7.1, et seq. It is argued that Section 7.37 of the regulations promulgated by the Secretary under the provision of the Act shall not preclude the Secretary; Administrator, Agricultural Stabilization and Conservation Service; or Deputy Administrator, State and County Operations, Agricultural Stabilization and Conservation Service, from administering any and all programs or exercising other functions designated to the Community Committee, County Committee, State Committee or any Employee.

█ As pointed out in the Kopf case, supra, the Secretary undoubtedly maintains some supervisory power over the actions of his subordinates but such power does not go to an issue such as we have here, which has been finally determined pursuant to regulations.

In support of it's contention, the Government cites numerous cases and places substantial reliance on a Fourth Circuit Decision, Graham v. Lawrimore, 287 F.2d 207 (1964). In reviewing each of these citations referred to in the Government's brief it is noted that without an exception they are based primarily on fraud, misrepresentations, unlawful schemes and devices by the producers. Since no such contention is made against the plaintiff, producer, in this case, the cases relied upon by the Government are in no way applicable.

█ The plaintiff contends that undue influence was exercised upon the County Committee by a representative employee assigned to the State Committee as acting State Administrator, which was responsible for the action by the County Committee in the late rechecking, remeasurements and imposing penalties. In view of the fact that such action of the A.S.C. Committee was taken without express authority by the Congress and inconsistent with the statutes and regulations thereto, it is unnecessary to determine whether or not there was an improper interpositional influence by the acting state administrator on the County Committee.

By stipulation the penalties imposed against the plaintiff, Lindsey Bros., in the amount of $6,057.97 were withheld from the support and subsidy payments due the plaintiff for the year 1966 with the understanding that if the action of the Review Committee is set aside by the Court the sum withheld would be refunded.

It is the opinion of the Court that the action of the Review Committee was not warranted as a matter of law and will be set aside. It will be remanded and the St. Francis County A.S.C. Committee, Department of Agriculture, will be directed to refund the amount withheld.

An Order will be entered in accordance with this opinion.