C. B. JONES, Fred W. Koch, and John H. Simpson, Marketing Quota Review Committee, United States Department of Agriculture, Agricultural Stabilization and Conservation Service, Appellants,

v.

Lawson HUGHES, Appellee.

C. B. JONES, Fred W. Koch, and John H. Simpson, Marketing Quota Review Committee, United States Department of Agriculture, Agricultural Stabilization and Conservation Service, Appellants,

v.

LINDSEY BROS., a Partnership, Appellee.

Nos. 19095, 19096.

United States Court of Appeals Eighth Circuit.

Sept. 16, 1968.

Robert V. Zener, Atty., Dept. of Justice, Washington, D. C., for appellants; Edwin L. Weisl, Jr., Asst. Atty. Gen., Dept. of Justice, Washington, D. C., Alan S. Rosenthal, Atty., Dept. of Justice, Washington, D. C., and W. H. McClellan, U. S. Atty., Little Rock, Ark., on the brief.

E. J. Butler, Forrest City, Ark., for appellees; Phil Hicky, Forrest City, Ark., on the brief.

Before VAN OOSTERHOUT, Chief Judge, HEANEY, Circuit Judge, and REGISTER, Chief District Judge.

HEANEY, Circuit Judge.

The principal issue presented on this appeal is: Does a determination by personnel of a county (ASCS) office that the appellees were in compliance with their cotton acreage allotment bar a redetermination of that compliance? The District Court held that it did. Lindsey Bros. v. Jones, 271 F.Supp. 933 (E.D. Ark.1967). We hold to the contrary.

The secondary issue is: Are the appellees nevertheless protected against the effects of an adverse redetermination by the "erroneous notice" provision of regulations promulgated by the Secretary of Agriculture pursuant to the Act? 7 C.F.R. § 718.10(b) (1964 ed.). The District Court did not reach this issue. We hold that each producer is partially protected.

Under the Agricultural Adjustment Act of 1938, 7 U.S.C. § 1281 et seq. (1964 ed.), cotton acreage allotments are established for each farm by a county committee. Each farm on which cotton is produced is measured to ascertain whether the acreage planted is within the allotment. 7 U.S.C. § 1374(a).

The Secretary, pursuant to authority granted in the Act, 7 U.S.C. § 1375, promulgates regulations which establish the procedure to be followed by the county committee in securing compliance. 7 C.F.R. §§ 718.1–718.15. They provide that after an allotment has been established, each farm shall be visited by a crop reporter for the purpose of obtaining a report of acreage. 7 C.F.R. §§ 718.7–718.8; 722.6. This report is signed by the farm operator, 7 C.F.R. § 718.8 (a), and from it, personnel of the county office determine the acreage and mail notices of their determination to the farmer. 7 C.F.R. §§ 718.9(a); 718.10 (a); 722.6.

When a determination of excess acreage is made,[1] the producer may request a remeasurement, 7 U.S.C. § 1374(c); 7 C.F.R. § 718.13, or plow under the excess.

If the decision is to plow under the excess, a crop reporter revisits the farm after the plowing and reports to the county office. 7 C.F.R. § 718.14. Its personnel determine whether the farmer is then in compliance and notify the producer of its decision. If the county office finds him in compliance, it issues him a farm marketing card. 7 C.F.R. § 722.17.

The regulations further provide that the state or county committee, or the deputy administrator, may at any time require a redetermination of the acreage planted. 7 C.F.R. §§ 718.11; 718.13; 722.46(a). If this redetermination establishes that the producer has overplanted, then the producer (1) *may* be given the opportunity to plow under the excess, 7 C.F.R. § 718.14(f) (2) (1965 ed.), or (2) may be assessed a penalty. In the latter case, the producer may pay the penalty or request a review by the review committee.

The procedure outlined above was followed with respect to Hughes and the Lindsey Brothers. A crop reporter visited each farm and submitted a report to the county office. A determination was made by the office personnel that excess acreage had been planted on each farm. Both producers elected to comply and purported to do so by plowing under excess acreage. A second crop reporter visited each farm, verified the plow under and again reported to the county office. The office manager notified the appellees, on a "notice of acreage" form that they were in compliance and issued each a "farm marketing card."

More than fifteen days later, a redetermination was made by two supervisory crop reporters of the Hughes' and Lindsey Brothers' farms. They reported that neither had made the required plow under. They also reported that the earlier crop reporters had erred

---

1. The producer is notified by mail of his excess acreage. The "Notice of Acreage" form lists the allotment acreage, the determined acreage and the excess acreage. The form contains the following legend:

"If you have reason to believe any acreage determined for the farm is not correct, you may have such acreage remeasured by filing a request at the ASCS County Office not later than the date in Column (I) or 15 days from the date of this notice, whichever is earlier, with a cash deposit to cover the cost of remeasurement. IF YOU HAVE ANY QUESTIONS CONCERNING THIS NOTICE, CONTACT YOUR ASCS COUNTY OFFICE."

in computing the acreage planted. The office manager, acting on the basis of the reports, notified the appellees that they were not in compliance. The Lindsey Brothers decided against a further plow under. The Hughes' crop had been fully harvested. The county committee assessed penalties.

The appellees appealed to the Marketing Quota Review Committee.[2] They alleged reliance on the initial notice of compliance and contended that the Department of Agriculture could not in good faith and justice redetermine the issue of their compliance. They did not dispute the accuracy of the acreage planted as found on redetermination, but contended that they had made the plow under.

The review committee viewed the Hughes' and Lindsey Brothers' claims as a request for relief under the provisions of the "erroneous notice" regulation. It held an evidentiary hearing and made findings of fact and conclusions of law. It denied relief on the grounds that the producers had not established facts entitling them to relief under the regulation.

The appellees then sought review of the review committee's decision in the United States District Court.[3] The court entered an order reversing and remanding the Lindsey Brothers' case with directions to refund the assessed penalty with interest. It subsequently took similar action in the Hughes' case.

The District Court held, as a matter of law, that the notice of compliance given to each producer became final within fifteen days from the date the notices were received by the producers. The decision was based on 7 U.S.C. § 1385,[4] and the decision of this Court in United States v. Kopf, 379 F.2d 8 (8th Cir. 1967), interpreting § 1385. The District Court did not reach the question of whether the appellees were entitled to relief under the provisions of the "erroneous notice" regulation.[5]

2. The Marketing Quota Review Committee is composed of three farmers, from the same or nearby counties in which the farm is located, appointed by the Secretary of Agriculture to serve a term of one calendar year. The membership of the review committee may not include any member of the local committee which determined the farm acreage allotment, the normal yield, or the farm marketing quota for such farm. 7 U.S.C. § 1363; 7 C.F.R. §§ 711.5–711.11. The jurisdiction of the committee is governed by 7 C.F.R. § 711.12 in accordance with 7 U.S.C. § 1363.

3. The court had jurisdiction under 7 U.S.C. § 1365.

4. Section 1385, 7 U.S.C., provides: "The facts constituting the basis for any payment under the Soil Conservation and Domestic Allotment Act, as amended, parity payment, payment under section 1339 of this title, loan, or price support operation, or the amount thereof, when officially determined in conformity with the applicable regulations prescribed by the Secretary or by the Commodity Credit Corporation, shall be final and conclusive and shall not be reviewable by any other officer or agency of the Government. In case any person who is entitled to any such payment dies, becomes incompetent, or disappears before receiving such payment, or is succeeded by another who renders or completes the required performance, the payment shall, without regard to any other provisions of law, be made as the Secretary of Agriculture may determine to be fair and reasonable in all the circumstances and provide by regulations. This section also shall be applicable to payments provided for under section 1348 of this title. * * * *"

5. "The decision of the County Committee determining the farm in compliance September 4, 1964, which became binding was not questioned for some two months. During this time the cotton was substantially harvested and marketed. * * *

* * * * *

"* * * [N]o appeal [was] filed * * * from * * * [that] determination * * *. * * * The Review Committee delayed a hearing until September 7, 1966, and its decision until September 23, 1966, over two years later. There is no contention of fraud or misrepresentation, therefore, the de-

## I. FINALITY OF THE NOTICE OF COMPLIANCE.

Section 1385 provides, in substance, that the facts constituting the basis for various payments under the programs administered by the Secretary of Agriculture "when officially determined in conformity with the applicable regulations prescribed by the Secretary" shall be final and conclusive and shall not be reviewable by any other officer or agency of the government. The District Court held that the notice of compliance, prepared by the office personnel of the county ASCS office, constituted an official determination in conformity with the applicable regulations and was non-reviewable. We disagree.

■ The regulations make it clear that an acreage determination by the office personnel is intended to be neither official nor final within the meaning of § 1385. The regulations authorized the Secretary to make a redetermination, and the producer can, if he sees fit, ignore an adverse determination or redetermination until the county committee assesses a penalty.

If the county committee decides to assess a penalty, the producer is mailed a "Notice of Marketing Quota Excess and Penalty Due" form. This form indicates the excess acreage, the normal yield per acre, the marketing excess and the penalty due as a result of this excess.[6]

The regulations give the producer fifteen days to appeal the decision of the county committee assessing the penalty. The appeal application is sent to the county committee for review. If it finds that the relief sought is proper, it is authorized to grant it. 7 C.F.R. § 711.14. If not, it takes the necessary steps to arrange a hearing before the review committee.

At that hearing, the producer is permitted to contest any fact constituting a basis for the imposition of the penalty, 7 C.F.R. §§ 711.14 and 711.21, except those which have "previously been reviewed by a review committee and [have] become final." 7 C.F.R. § 711.13.

■■ In the light of the regulations, we hold that an official determination, pursuant to the regulations, is not made until the county committee notifies the producer that it has assessed a penalty. It follows that the earlier notice of acreage (compliance) is not final as to a producer or the Department of Agriculture.

■ The regulations are, in our view, consistent with § 1385. That section cannot be read as giving the status of an official determination to every act of an ASCS employee.

We are also of the opinion that *Kopf* is not controlling. The rationale of *Kopf* is that a decision which is final as to a producer should be final as to the Department of Agriculture. Here, the notice of compliance was final as to neither.

In *Kopf*, the yield determination was made by the county ASCS committee after a full evidentiary hearing. Here, it was made by the personnel of a county ASCS office without a hearing. We also note that the administrative action was of an executive, rather than an adjudicative, nature and was thus not

termination of compliance September 4, 1964, was final as to both the administrative agency and the farmer. * * *"

Lindsey Bros. v. Jones, 271 F.Supp. 933, 938 (E.D.Ark.1967).

6. The form contains the following legend: "Any application for review of the farm marketing quota or farm marketing excess is required to be filed in writing with the county office manager of the ASC county committee, within 15 days after the date of mailing this notice, in accordance with the review regulations prescribed by the Secretary of Agriculture. These regulations are available at the county office. If a determination of the county committee has become final under the Marketing Quota Review Regulations, it may not be reconsidered in a subsequent review proceeding concerning the farm marketing quota."

binding in a *res judicata* sense. K. Davis, Administrative Law § 18.08, p. 602 (1958). See, Pearson v. Williams, 202 U.S. 281, 26 S.Ct. 608, 50 L.Ed. 1029 (1906).

In *Kopf*, the Court found that the position of the Department of Agriculture was inconsistent with the regulations as a whole. Here, the procedure followed was consistent with the regulations.

Finally, the applicable regulations in *Kopf* did not provide relief for those who, in good faith, relied on an earlier determination. Here, relief is provided for those who do so in good faith. 7 C.F.R. § 718.10(b).

We also note that the statute and regulations provide at least two ways in which a producer can, by paying the cost, obtain an acreage determination not subject to a redetermination: by measurement prior to planting, 7 U.S.C. § 1374(b); 7 C.F.R. § 718.5(h), or by measurement prior to adjustment, 7 C.F.R. § 718.14(d).[7]

We recognized in *Kopf* the necessity of the Secretary maintaining some supervisory power over the action of his subordinates, but held that such power did not give him the right to reverse a determination made after an evidentiary hearing held pursuant to regulations. Here, the need to maintain the power is consistent with the need to treat producers fairly.

## II. PROTECTIONS FROM PENALTY BY "ERRONEOUS NOTICE" REGULATION.

We turn to the question of whether the review committee erred in finding that neither producer was entitled to protection under 7 C.F.R. § 718.10(b). That regulation provides that a producer will be "deemed" to be in compliance notwithstanding the fact that a redetermination has established that he overplanted his acreage allotment if:

(1) The producer relied in good faith on an erroneous measurement;

(2) The producer did not receive actual knowledge of the error in time to adjust his acreage in accordance with the regulations;

(3) The error in the notice is the fault of the reporter or an employee of the county office;

(4) The producer was in no way at fault; and

(5) The error in the notice was not so great that the producer could reasonably be expected to have questioned the acreage of which he was notified.

▬ The findings of the review committee are conclusive if supported by substantial evidence. 7 U.S.C. § 1366.[8] The burden of proof is on the applicant as well as to all fact issues raised by him. 7 C.F.R. § 711.21(e). The power of this Court to review is coextensive with that of the District Court.[9]

---

**7.** This Court was presented with a similar issue in Knapp-Monarch Co. v. Commissioner of Internal Revenue, 139 F.2d 863 (8th Cir. 1944). There, the Commissioner sought to change a ruling he had previously made. We upheld his authority to do so on the ground that statutory authority existed under which a taxpayer could obtain final rulings. See also, McIlhenny v. Commissioner of Internal Revenue, 39 F.2d 356 (3d Cir. 1930).

**8.** Review Committee, Venue VII, etc. v. Willey, 275 F.2d 264, 273 (8th Cir. 1960), cert. denied 363 U.S. 827, 80 S.Ct. 1597, 4 L.Ed.2d 1522 (1960); Crolley

v. Tatton, 249 F.2d 908, 911 (5th Cir. 1957), cert. denied 356 U.S. 966, 78 S.Ct. 1005, 2 L.Ed.2d 1073 (1958); Rakestraw v. Winchester, 254 F.Supp. 729, 732 (M.D.N.C.1966); Kephart v. Wilson, 219 F.Supp. 801, 811 (W.D. Tex.1963), affirmed sub nom. Chandler v. David, 350 F.2d 669 (5th Cir. 1965), cert. denied 382 U.S. 977, 86 S.Ct. 548, 15 L.Ed.2d 469 (1966).

**9.** Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964); Farley v. Celebrezze, 315 F.2d 704 (3d Cir. 1963); Ward v. Celebrezze, 311 F.2d 115 (5th Cir. 1962); Roberson v. Ribicoff, 299 F.2d 761 (6th Cir. 1962).

As the facts as to each producer are different, we consider them separately:

### THE LINDSEY BROTHERS

The Lindsey Brothers received a 550 acre cotton allotment for the 1964 crop year. They applied for and received an additional 17 acres before planting.

On June 15, 1964, N. Peevey, a crop reporter, inspected the Lindsey Brothers' farm and, on July 31st, they were notified that they had planted 590.3 acres, 23.3 more than their allotment.

The Lindsey Brothers elected to adjust their acreage and a crop reporter, D. Danehower, checked the adjusted acreage. On September 4th, they received notice that they were in compliance.

On October 31st, S. Chun and A. Rowlett, supervisory crop reporters, checked the Lindsey Brothers' farm. At that time, they had harvested a substantial portion of the crop. The reporters redetermined that they had planted 624.96 acres. The reporters also redetermined that the Lindsey Brothers had plowed under only 8.86 acres of cotton prior to Danehower's check rather than 23.3 acres.

On November 20th, the Lindsey Brothers were notified that their adjusted acreage was 616.1 acres, that the value of their excess production over their marketing quota was $27,054 and that they were assessed a penalty of $5,519.02.

The Lindseys' applied to the county committee for relief under the "erroneous notice" regulation. The application was denied on March 24, 1965.

They appealed to the Market Quota Review Committee. Their sole contention before the review committee was that they had relied upon the September 4th notice of compliance. The review committee, after a full evidentiary hearing, affirmed the action of the county committee.

The review committee found that (1) the Lindsey Brothers had plowed under only 8.6 of the 23.3 acres originally found to have been overplanted, (2) the extent of the error in the original notice should have caused them to question the acreage of which they were notified, and (3) at the time they were notified of the results of the spot-check, they had sufficient acreage to adjust their acreage but did not do so.

■ The Lindsey Brothers challenge the sufficiency of the evidence supporting each of the review committee's findings.

(1) W. Lindsey testified that he "plowed up" more than 23.3 acres of cotton after receiving the original notice. The written report of D. Danehower, received in evidence, confirmed his testimony.

Chun, on the other hand, testified that he rechecked the farm and disallowed all of Danehower's "plow-up credits," except for 8.86 acres. He testified that he disallowed the difference of 14.44 acres because:

"* * * Mr. Peevey measured back from the edge of the field to where the cotton actually started and gave this as a deduction. Then the plow-up reporter that checked the plow-up came right along and gave this same identical deduction as a plow-up.

\* \* \* \* \* \*

"Now Mr. Lindsey did plow-up some cotton, but I would have to say on some fields there wasn't any cotton plowed up from the original check but now on some fields there was, * * * [8.37 acres]."

The review committee rejected W. Lindsey's direct testimony and accepted the testimony of Mr. Chun. It stated: "Mr. Chun and Mr. Rowlett carefully examined the acres on which plow-up credit had been allowed by previous reporters and found no evidence that plow-up had been performed in these areas."

The issue as to whether W. Lindsey plowed up eight or twenty-three acres is one of credibility. This being the case, we accept the finding of the committee.

■ (2) We reject the review committee's finding that the error in the original notice was so great that the producer should have questioned it. This finding is, of necessity, based on the conclusion that the Lindsey Brothers knew, or should have known, that they planted 625 acres rather than 567. There is no evidence before the review committee that the Lindsey Brothers had actual knowledge, or that a reasonable producer would have known, of the overplanting. The record shows that the county committee's decision that the Lindsey Brothers should have known that they overplanted was based on an allegedly new but unpublished and unsubstantiated standard that anyone that overplanted by more than five per cent would automatically be denied protection of the "erroneous notice" regulation. While this may or may not be a reasonable standard to impose, this record fails to support its reasonableness as to the Lindsey Brothers or indeed that the standard was a reasonable one.

The Lindsey Brothers' farm is situated in river lowland, and the cotton acreage on that farm consists of thirty-five irregular plots. Many of the plots were bordered by shade trees and cut by ravines. Lindsey's testimony that they had relied on measurements by county ASCS employees for ten years is uncontradicted.

■ (3) We also reject the finding that the Lindsey Brothers were notified of the difference between 590 and 625 acres in time to adjust their acreage "in accordance with the applicable regulations." By regulation, the Secretary provides for an adjustment prior to harvesting. 7 C.F.R. § 718.14(g). This regulation is consistent with the then existing statute that provided that the Secretary must provide an opportunity to adjust acreage within a "reasonable time prior to harvest." 7 U.S.C. § 1374(c). It is undisputed that the Lindsey Brothers had harvested a substantial portion of their cotton before they received the notice of November 20th.

■ We hold that the Lindsey Brothers are entitled to relief under the "erroneous notice" regulation for all but 14.4 acres—the difference between the 23.3 acres they were instructed to plow under and the 8.86 acres that they were found to have plowed under.

HUGHES

Hughes received a 55 acre cotton allotment for the 1964 crop year. On July 7, 1964, S. Nichols, a crop reporter, visited the farm for the purpose of obtaining a report of acreage. On July 14th, Hughes received a notice stating that he was determined to be 3.2 acres in excess of his allotment. Hughes requested a remeasurement which was performed by another crop reporter, T. Leoppard, on August 24th. That recheck also indicated an excess of 3.2 acres and Hughes was duly notified.

Hughes elected to adjust his acreage and so notified the county ASCS office. On August 27, 1964, a third crop reporter, D. Danehower, revisited the farm to determine whether the necessary plow under had been completed. He reported in the affirmative and, on August 31st, Hughes was notified that he was in compliance.

Since the farm had been determined to be in compliance with the allotment, Hughes received his marketing card and proceeded to harvest all of his cotton.

On November 26th, S. Chun and A. Cothan, two supervisory crop reporters, rechecked the Hughes' farm. They determined that Hughes had originally planted 59.5 acres, instead of 58.2 acres, and that Hughes had not in fact plowed up the 3.2 excess acres of which he was originally notified.

On December 1st, he was notified that he was 4.5 acres in excess. And, on the same date, he was notified that his farm marketing excess was $3,505 and that the penalty was $715.02.

Hughes applied to the county committee for relief under the "erroneous notice" regulation. The county commit-

tee granted relief. The state office reversed. Hughes appealed to the Market Quota Review Committee which held a full evidentiary hearing and made findings of fact and conclusions of law.

In this appeal, Hughes' sole contention was that he was entitled to relief under the "erroneous notice" regulation.

The review committee refused to grant Hughes relief on the grounds that: (1) he did not plow under the excess of which he was originally notified, and (2) the extent of the error in the original notice should have caused him to question the acreage of which he was notified.

■■ (1) We have reviewed the record and conclude that the review committee's findings that Hughes had not in fact plowed under the excess acreage is supported by substantial evidence. The finding is based on the oral testimony of Crop Reporter Chun who testified that he examined the area supposedly plowed under and found cotton stalks but no lint cotton in the ground, indicating that the cotton had not been picked before it was plowed. It is further supported by the written report signed by Chun and Cothan.

While there is evidence tending to show a plow under, including Danehower's written report affirming that fact and Hughes' testimony that his supervisor plowed it before the cotton was picked, the review committee is the judge of the credibility of the witnesses. They determined that Chun's testimony was creditable.

■■ (2) We hold, however, that Hughes had a right to rely on the Nichols' report of July 7th and the Leoppard report of August 24th that his excess acreage was 3.2 instead of 4.5 acres. Thus, the penalty should be assessed on the former rather than the latter amount.

We reverse and remand to the District Court with instructions to it to remand to the review committee for a reassessment of the penalties in accordance with this opinion.