PEARSON *v.* WILLIAMS, UNITED STATES COMMIS-
SIONER OF IMMIGRATION.

WRIT OF CERTIORARI TO THE UNITED STATES CIRCUIT COURT
OF APPEALS FOR THE SECOND CIRCUIT.

No. 237. Argued April 19, 20, 1906.—Decided May 14, 1906.

The Secretary of Commerce and Labor, has a right under § 21 of the act of March 3, 1903, 32 Stat. 1218, to order the deportation of an alien as having come to this country under contract to perform labor, after a second hearing before a board of special inquiry, although there had previously been a special inquiry, pursuant to § 25 of the act at the time of his landing before the same persons, and upon the same questions, and he had been allowed to land. 

The board of inquiry under § 25 of the act of 1903 is not a court, but an instrument of the executive power, and its decisions do not constitute *res judicata* in a technical sense.

THE facts are stated in the opinion.

*Mr. Eugene Treadwell* for petitioners.

*Mr. Charles H. Robb*, Assistant Attorney General, for respondent.

MR. JUSTICE HOLMES delivered the opinion of the court.

This case comes here by certiorari. 198 U. S. 585. It is a writ of *habeas corpus*, addressed to the Secretary of Commerce and Labor and to the Commissioner of Immigration of the Port of New York, on which the Circuit Court made an order discharging the petitioners, but the Circuit Court of Appeals reversed the order by a divided court. 136 Fed. Rep. 734. The return to the writ discloses that the petitioners are British aliens, that they arrived in New York on February 1, 1904, were detained for examination by a board of special inquiry, were examined and were allowed to land. The return further shows that afterwards, in March, they were arrested by order of the said Secretary and after another hearing before a board of special inquiry were ordered to be returned to England, as being in this country in violation of the acts of Congress touching the matter. The only question is whether the Secretary had the right to direct the second hearing and to make the order of deportation under § 21 of the act of March 3, 1903, c. 1012, when there had been an inquiry at the time of the petitioners' landing and a decision in their favor under § 25, 32 Stat. 1218, 1220. It is proper to add, as giving more dramatic force to the contention of the petitioners, that the proceedings upon both inquiries are incorporated into the return by reference and that they appear to have been before the same persons, upon the same question, namely, whether the petitioners came to this country under contract to perform labor contrary to the statutes of the United States. Act of February 26, 1885, c. 164, 23 Stat. 332; February 23, 1887, c. 220, 24 Stat. 414; March 3, 1891, c. 551, 26 Stat. 1084; March 3, 1903, c. 1012, 32 Stat. 1213. See also acts of Octo-

ber 19, 1888, c. 1210, 25 Stat. 566; March 3, 1893, c. 206, 27
Stat. 569; August 18, 1894, c. 301, 28 Stat. 372, 390.

It is provided by § 24 of the above mentioned act of 1903
that "every alien who may not appear to the examining im-
migrant inspector at the port of arrival to be clearly and be-
yond a doubt entitled to land shall be detained for examina-
tion in relation thereto by a board of special inquiry." The
following section, § 25, directs the appointment of such boards
as shall be necessary for the prompt determination of cases of
aliens detained, to consist of three members to be selected from
the immigrant officials in the service. "Such boards shall have
authority to determine whether an alien who has been duly
held shall be allowed to land or be deported." They are to
keep records, "and the decision of any two members of a board
shall prevail and be final," subject to appeal by the alien or
a dissenting member "through the Commissioner of Immigra-
tion at the port of arrival and the Commissioner General of
Immigration, to the Secretary of the Treasury," (now the Sec-
retary of Commerce and Labor, act of February 14, 1903,
c. 552, §§ 4, 7, 10, 32 Stat. 826, 828, 829), whose decision shall
then be final." In this case the first decision of the board
was unanimous, and the petitioners contend that it was final
by the very words of the act.

On the other hand it is provided by § 21 "That in case the
Secretary of the Treasury shall be satisfied that an alien has
been found in the United States in violation of this act he
shall cause such alien, within the period of three years after
landing or entry therein, to be taken into custody and returned
to the country whence he came," with details as to the method.
It is insisted by the Government that this power is not quali-
fied or cut down by § 25. Of course if the Government is
right on the construction of the act, there is no question of the
validity of the provision. By that construction the finality
given to the decision of the board is only a finality consistent
with and subject to § 21, as, conversely, by that contended for
on the other side, the power of the Secretary is subject to § 25.

On the former view the United States admits aliens condition-
ally, and preserves that condition notwithstanding a prelimi-
nary decision in their favor by a board which it provides.   The
authority of Congress to impose such conditions hardly was
disputed and is not open to doubt.   *Lem Moon Sing* v. *United
States,* 158 U. S. 538, 543; *Ekiu* v. *United States,* 142 U. S. 651;
*Japanese Immigrant Case,* 189 U. S. 86, 97, 99.   The only
question is what it has done.

Some meaning must be found for § 21, no less than for § 25.
For the petitioners it is said that § 21 is satisfied by confining
the power of the Secretary to cases where a board of special
inquiry has not acted.   But this would limit his action to a
very narrow scope, since the act provides for such a board in
every case where the alien does not appear to the inspector
"to be clearly and beyond a doubt entitled to land."   Sec-
tion 24, quoted above.   Again it would defeat in great meas-
ure the policy of the original act of October 19, 1888, c. 1210,
§ 1, 25 Stat. 566 (see also act of March 3, 1891, c. 551, § 11, 26
Stat. 1086), which obviously was to give a chance for fuller in-
vestigation than is possible at the moment of landing, when any
inquiry necessarily must be of a very summary sort.   See *Jap-
anese Immigrant Case,* 189 U. S. 86, 99.   Yet this policy is
emphasized and reinforced by changing the period of probation
from one year to three, while in other respects § 21 follows
almost literally the words of the earlier act.   The petitioners'
construction also would empty the requirement in § 20 that
"any alien who shall come into the United States in violation
of law" shall be deported, of the greater part of its natural
meaning, since it would limit it to such aliens only as appeared
to the inspector to be entitled beyond a doubt to land and
for that reason escaped a board of special inquiry before they
came in.

Turning now to § 25, that section seems to us to disclose
additional reasons on the Government's side.   The board is an
instrument of the executive power, not a court.   It is made
up, as we have mentioned, of the immigrant officials in the

service, subordinates of the Commissioner of Immigration, whose duties are declared to be administrative by § 23. Decisions of a similar type long have been recognized as decisions of the executive department, and cannot constitute *res judicata* in a technical sense. *Ekiu* v. *United States*, 142 U. S. 651; *Fong Yue Ting* v. *United States*, 149 U. S. 698, 713; *Lem Moon Sing* v. *United States*, 158 U. S. 538; *Fok Yung Yo* v. *United States*, 185 U. S. 296, 305; *Japanese Immigrant Case*, 189 U. S. 86, 98; *United States* v. *Ju Toy*, 198 U. S. 253, 263. The decisions necessarily are made, as we have said, in a summary way, in order to reach the "prompt determination" declared by § 25 to be an object. The board has no power to compel witnesses to attend, but, as was said by the Circuit Court of Appeals, must decide upon such evidence as is at hand or is readily accessible. These are considerations against the likelihood that Congress meant such decisions to be binding upon the Secretary of Commerce and Labor, the superior officer of the members of the board. On the other hand, there is a plain and sufficient meaning for the words making their decision final—and that is that it shall be final where it is most likely to be questioned, in the courts.

It is true that the decision hardly will be questioned in the courts except when it is against the right to land. In the earlier acts the decision of an inspector was made final, in terms, only "when adverse to such right." Act of March 3, 1891, c. 551, § 8, 26 Stat. 1085. Since then, it is said, Congress has gone on increasing the importance of the decision, first, by providing a board in cases of doubt, with a limited appeal, act of March 3, 1893, c. 206, § 5, 27 Stat. 569, 570, and then by enlarging the right of appeal and extending the finality of the ultimate decision to every case, by the present § 25. But this appears to us to strain and even pervert the conclusions to be drawn from the change. There can be no doubt, we think, that the provision of the act of 1891 referred to the courts. The adverse decision of an inspector would be followed by deportation unless that should be stopped by *habeas corpus*. To

prevent a retrial in that event the provision was passed. It is not likely that the purpose was changed when the words "when adverse to such right" were dropped. More probably they were omitted simply as superfluous. If the question ever could arise in the courts, except when the alien was ordered to be deported, there was no reason why the decision to admit should not be given an effect equal to that of a decision to exclude. If the question could arise only in the former case there was no need of the omitted clause. But the matter which was before the mind of Congress presumably was that which had been before it on the former occasion, which had been the subject of judicial discussion, *Lem Moon Sing* v. *United States*, 158 U. S. 538; *Fok Yung Yo* v. *United States*, 185 U. S. 296, 304, 305, and which was not quite disposed of until the last term of this court. *United States* v. *Ju Toy*, 198 U. S. 253.

There was a suggestion at the argument that the decision of the Secretary was not warranted by the evidence. But if, for the purposes of decision, we assume that question to be open, we do not think that it needs discussion. We are of opinion that the decision of the Circuit Court of Appeals was right.

*Judgment affirmed.*

Mr. Justice Harlan, Mr. Justice Brewer and Mr. Justice Peckham dissent.