SIRE v. BERKSHIRE et al.

(District Court, W. D. Texas, Austin Division.   March 6, 1911.)

1. ALIENS (§ 54*)—DEPORTATION PROCEEDINGS—NATURE AND CHARACTER.

A proceeding for the deportation of an alien is not criminal in its character, and an order of deportation is not a punishment for crime so as to entitle the alien to the constitutional guaranties and safeguards accorded to a citizen accused of crime.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. § 54.*]

2. CONSTITUTIONAL LAW (§ 318*)—DEPORTATION—RIGHT TO COUNSEL—DUE PROCESS.

Where an alien in deportation proceedings did not deny her alienage nor that at the time of her arrest she was engaged in immoral business, and it appeared that she was represented by counsel on a hearing before the Secretary of Commerce and Labor, the deportation was pursuant to due process of law, though she was not permitted to consult an attorney before she was first examined by the immigration officers.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 949; Dec. Dig. § 318.*]

3. CRIMINAL LAW (§ 163*)—DEPORTATION—NATURE OF PROCEEDINGS—FORMER JEOPARDY.

Const. Amend. 5, providing that no person shall be subject for the same offense to be twice put in jeopardy of life or limb, applies only to criminal proceedings, and hence has no application to proceedings for the deportation of an alien.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 288; Dec. Dig. § 163.*]

4. ALIENS (§ 54*)—DETERMINATION OF ADMINISTRATIVE OFFICERS—RES JUDICATA.

Since immigration officials are administrative officers and their decisions are those of the executive department of government, an order discharging an alien in deportation proceedings cannot operate as res judicata in a subsequent proceeding against the same alien.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. § 54.*]

5. ALIENS (§ 53*)—DEPORTATION—STATUTES—AMENDMENT—PROSTITUTES.

Immigration Act Feb. 20, 1907, c. 1134, § 3, 34 Stat. 899 (U. S. Comp. St. Supp. 1909, p. 450), providing for the deportation of alien prostitutes within three years after the date of entry, was amended by Act Cong. March 26, 1910, c. 128, § 2, 36 Stat. 264, by striking out the three-year limitation. *Held* that, after such amendment, an alien prostitute was subject to deportation though she had been in the country more than three years at the time of her arrest.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. § 53.*]

Petition for writ of habeas corpus by Marcelle Sire to obtain her discharge from the custody of F. W. Berkshire and another pursuant to a warrant of deportation.   Writ denied.

The petitioner, Marcelle Sire, complains that she was unlawfully arrested by the respondents, who are immigration officers at El Paso, Tex., and prays for her release from custody.   It appears from the allegations of her petition, considered in connection with the attached exhibits, that she was taken into custody on the night of January 18, 1911, on the charge of being an alien practicing prostitution in the United States, or being an inmate of a house of prostitution.   In her petition she protests that her imprisonment is in vio-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

lation of the fifth and sixth amendments of the Constitution and of section 860 of the Revised Statutes (U. S. Comp. St. 1901, p. 661). In support of this contention it is alleged that, immediately after being taken into custody, she demanded the right to secure an attorney, and this right was denied her until she had been obliged to be a witness against herself. It is further claimed that she is an ignorant woman and was unaware of her right to have counsel and of the right to refuse to testify without first having procured an attorney, and that she testified in ignorance of this right. It is further alleged that she came to the United States from the republic of France in April, 1906; that she was arrested in Los Angeles in July, 1909, for being unlawfully in this country in violation of the provisions of the act of 1907; and that upon the hearing before the immigration officials she was discharged. In reference to this arrest and hearing the petition alleges as follows:

"Petitioner here shows that her arrest at the time above mentioned was made at a time more than three years after she had entered the United States, and that this fact was so determined at said hearing and was a basis for her acquittal. Wherefore she pleads that said acquittal in Los Angeles, Cal., which was had on or about the 4th of July, 1909, is a complete bar to this prosecution, and that she is therefore being restrained of her liberty in violation of that part of the fifth amendment of the Constitution which provides as follows: 'Nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb.'"

The petition contains the further allegations:

"Your petitioner further says that her apprehension, commitment, and incarceration, and the purpose to deport her, is unlawful, in this: That she has actually and continuously been a resident of the United States of America since the date of her arrival in this country, to wit, the 1st day of April, 1906, to the present date, and long prior to the passage of the act of February 20, 1907, and for four years, lacking a few days prior to the passage of the amendment of March 26, 1910, and that her status in the United States was settled and fixed, after she had remained in the United States for a period of three years from her arrival, and that the amendment of March 26, 1910, does not apply to her.

"Your petitioner further says that her apprehension, commitment, incarceration, and the purpose to deport her is illegal, in this, that by so doing the Bureau of Immigration and Naturalization seeks to give a retrospective application to the amendment of March 26, 1910, and to apply the same to an alien lawfully within the United States of America, and in fact judicially determined to be lawfully within the United States of America."

After the hearing before the immigration officials, the petitioner, by her attorneys, filed a written protest against the proceeding and requested further time to enable them to prepare a proper defense. The request for time was refused. The attorneys of the petitioner asked that the protest filed by them be made a part of the record, and that the papers be transmitted to the Commissioner General of Immigration or to the appropriate reviewing tribunal.

On February 6, 1911, the Commissioner General addressed the following order to the officials at El Paso, directing the deportation of the petitioner:

"Supervising Inspector, Immigration Service, El Paso, Texas—Sir: The Bureau acknowledges the receipt of your letter of the 24th ultimo, No. 3985, transmitting record of hearing accorded the alien Marcele Sire, alias Marcelle Sira, who landed at the Port of New York, New York, ex S. S. 'La Touraine' April 1, 1906.

"After a careful consideration of the record of hearing submitted in this case, the Department is of opinion that the alien is in the United States in violation of law. You are therefore directed to detail an officer to take her into custody and convey her to New York, N. Y., for deportation, the expenses incident to such conveyance, including the employment of an attendant to assist in delivery, if necessary, at a nominal compensation of $1.00 and expenses both ways, being authorized, payable from the appropriation 'Expenses of Regulating Immigration, 1911.'

"Respectfully,        [Signed]   Danl. J. Keefe, Commissioner General.
"Approved:              [Signed]   Benj. S. Cable, Assistant Secretary."

On the same day, to wit, February 6, 1911, the Secretary of Commerce and Labor, by written order, of which the following is a copy, commanded the Commissioner of Immigration at Ellis Island, N. Y., to return the petitioner to the country whence she came:

"To William Williams, Commissioner of Immigration, Ellis Island, N. Y. H.: Whereas, from proofs submitted to me, after due hearing before Immigrant Inspector Frank H. Stone, held at El Paso, Texas, I have become satisfied that Marcele Sire, alias Marcele Siru, alien who landed at the port of New York, N. Y. ex SS. 'La Touraine' on the 1st day of April, 1906, is in this country in violation of the act of Congress approved February 20, 1907, amended by the act approved March 26, 1910, to wit: That the said alien is a prostitute and has been found an inmate of a house of prostitution and practicing prostitution subsequent to her entry into the United States, and may be deported in accordance therewith:

"I, Benj. S. Cable, Acting Secretary of Commerce and Labor, by virtue of the power and authority vested in me by the laws of the United States, do hereby command you to return the said alien to the country whence she came, at the expense of the steamship company importing her.

"For doing so this shall be your sufficient warrant.

"Witness my hand and seal this 6th day of Feby. 1911.

"[Signed]    Benj. S. Cable, Acting Secretary of Commerce and Labor."

Lewis Maury Kemp and Robert T. Neill, for petitioner.

Charles A. Boynton, U. S. Atty., for respondents.

MAXEY, District Judge (after stating the facts as above). The order of deportation issued by the Secretary of Commerce and Labor was made pursuant to the provisions of section 3 of the Act of February 20, 1907, c. 1134, 34 Stat. 899 (U. S. Comp. St. Supp. 1909, p. 450), as amended by section 2 of the Act of March 26, 1910, c. 128, 36 Stat. 264. The manner or method of deportation is shown by sections 20 and 21 of the former act.

Counsel for the petitioner, throughout the argument, proceeded upon the assumption that the proceeding to deport an alien is a criminal prosecution, and that the person resisting deportation is entitled to the constitutional guaranties and safeguards with which a citizen of the country, accused of crime, is invested. The Supreme Court, however, has decided, in language too plain to be misunderstood, that such a proceeding is not a criminal prosecution, and the order of deportation is not a punishment for crime. Fong Yue Ting v. United States, 149 U. S. 730, 13 Sup. Ct. 1016, 37 L. Ed. 905; Wong Wing v. United States, 163 U. S. 236, 16 Sup. Ct. 977, 41 L. Ed. 140. Thus it was said by Mr. Justice Gray, speaking for the court, in the Fong Yue Ting Case:

"The order of deportation is not a punishment for crime. It is not a banishment, in the sense in which that word is often applied to the expulsion of a citizen from his country by way of punishment. It is but a method of enforcing the return to his own country of an alien who has not complied with the conditions upon the performance of which the government of the nation, acting within its constitutional authority and through the proper departments, has determined that his continuing to reside here shall depend. He has not, therefore, been deprived of life, liberty, or property, without due process of law; and the provisions of the Constitution, securing the right of trial by jury, and prohibiting unreasonable searches and seizures, and cruel and unusual punishments, have no application."

But it is insisted by counsel that the petitioner was denied the right to consult an attorney on the hearing before the immigration officials

until after she had been examined by them touching her right to remain in the country, and that the denial of the right claimed was inconsistent with the due process clause of the fifth amendment of the Constitution. In this connection it is well to state that nowhere in the record does the petitioner deny her alienage, but, on the contrary, affirms it; nor does she deny that, at the time of her arrest, she was plying the business or calling of a prostitute. She seems to rely upon the law, by implication conceding the plain facts recited in the orders of deportation.

Adverting then to the clause of the fifth amendment invoked by her counsel, did the proceeding constitute, in her case, due process of law? The record discloses that there was a hearing—although claimed by the petitioner to be a pretended one—before the officials at El Paso. It is further shown that the record was transmitted to the Secretary of Commerce and Labor, and after its examination by that officer the order of deportation was duly issued. That the petitioner was represented by counsel at the hearing before the Secretary was conceded on the argument. She therefore had a hearing before executive officers authorized to entertain it, and the order issued by them, under such circumstances, constituted due process of law. The Japanese Immigrant Case, 189 U. S. 86, 23 Sup. Ct. 611, 47 L. Ed. 721; United States v. Ju Toy, 198 U. S. 253, 25 Sup. Ct. 644, 49 L. Ed. 1040; Nishimura Ekiu v. United States, 142 U. S. 651, 12 Sup. Ct. 336, 35 L. Ed. 1146; Fong Yue Ting v. United States, supra; Lem Moon Sing v. United States, 158 U. S. 538, 15 Sup. Ct. 967, 39 L. Ed. 1082; Turner v. Williams, 194 U. S. 279, 24 Sup. Ct. 719, 48 L. Ed. 979.

Not only so; such order of the secretary is final, and the courts are without power to review it. In the Japanese Immigrant Case, already referred to, it was said by the court:

"That Congress may exclude aliens of a particular race from the United States; prescribe the terms and conditions upon. which certain classes of aliens may come to this country; establish regulations for sending out of the country such aliens as come here in violation of law; and commit the enforcement of such provisions, conditions, and regulations exclusively to executive officers, without judicial intervention—are principles firmly established by the decisions of this court." 189 U. S. 97, 23 Sup. Ct. 613, 47 L. Ed. 721, and authorities cited.

See, also, section 25 of the Act of 1907, 34 Stat. 907, as to the finality of the secretary's decision.

It is further insisted by counsel for the petitioner that her arrest in Los Angeles, Cal., in July, 1909, on the charge of being in the United States in violation of the act of February 20, 1907, and her discharge upon that hearing, should be a bar to the present proceeding. And counsel base this contention on that clause of the fifth amendment of the Constitution which declares:

"Nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb."

The defense of former jeopardy applies to criminal causes, and. since this is not a criminal proceeding, the clause of the fifth amendment relied on by counsel is without application. It, however, may be said that immigration officials are administrative officers, and their de-

cisions are those of the executive department, and "cannot constitute res judicata in a technical sense." Pearson v. Williams, 202 U. S. 285, 26 Sup. Ct. 610, 50 L. Ed. 1029. Touching the contention of counsel that the petitioner is held in violation of section 860 of the Revised Statutes, it need only be remarked that the section referred to was expressly repealed by the Act of May 7, 1910, c. 216, 36 Stat. 352.

It is further claimed that, since the petitioner had been in this country more than three years prior to the act of March 26, 1910, she acquired the right to remain here under the act of February 20, 1907, and that therefore the former act is not applicable to her. The contention appears to be that the act of 1910 may not be given a retrospective effect for the purpose of divesting a supposed vested right. The position assumed by counsel is altogether untenable. In reply it may be said: (1) That it does not appear from the order of the secretary, nor from the allegations of her petition, that she was arrested for practicing prostitution, or for being an inmate of a house of prostitution, prior to the passage of the act of 1910; and (2) admitting for the sake of argument that it does so appear, the court is not aware of any principle of law, either constitutional or statutory, that would vest in an alien the right to come to this country and to remain here to ply the calling of a prostitute. By the terms of section 3 of the act of February 20, 1907, an alien prostitute could be deported only within the period of three years from the date of her entry. This provision of the statute was, by implication, repealed by section 2 of the amendatory act of March 26, 1910, and as the law now stands the three-year limitation no longer exists. The two acts were so construed in United States ex rel. Brion v. Prentis (D. C.) 182 Fed. 894, and in United States ex rel. Mango v. Weis (D. C.) 181 Fed. 860, and in such construction the writer concurs.

The court is of the opinion that the prayer of the petition for a writ of habeas corpus should be denied, and it is so ordered.