Helen L. RUCKER, Plaintiff,

v.

Donna E. SHALALA, Secretary of Health
and Human Services, Defendant.

No. IP94–1085–C–T/G.

United States District Court,
S.D. Indiana,
Indianapolis Division.

July 6, 1995.

Jamie Andree, Legal Services Organization of Ind., Bloomington, IN, for plaintiff.

Thomas E. Kieper, Asst. U.S. Atty., Office of U.S. Atty., Indianapolis, IN, for defendant.

## ENTRY AFFIRMING SECRETARY'S DENIAL OF BENEFITS

TINDER, District Judge.

This matter comes before the court for review of a denial of Supplemental Security Income ("SSI") benefits and Disability Insurance Benefits ("DIB") to the Plaintiff, Helen Rucker ("Rucker"), by Donna E. Shalala, the Secretary of the Health and Human Services (the "Secretary"). The court, having considered the submissions and briefs of the parties, finds that the Secretary's denial of benefits should be **AFFIRMED** for the reasons set forth below.

## I. PROCEDURAL AND FACTUAL BACKGROUND

This case involves the unique issue of administrative *res judicata*. Although the concept embodies the traditional notions of *res judicata*, its application is much more controversial and unique. Although the Administrative Law Judge ("ALJ") did consider this legal concept in arriving at his conclusion, the issue will be discussed in more depth in the instant entry.

Rucker was born July 23, 1940. She is a high school graduate and attended one year of nursing school, becoming a Licensed Practical Nurse ("LPN") in 1966. Rucker last worked on April 7, 1988 and has not looked for work since that date. Specifically, Rucker alleges that pain in her right hand, in combination with other symptoms, has pre- vented her from working since April of 1988 and, therefore, she should receive SSI and DIB.

Rucker originally applied for DIB and SSI on April 29, 1988. (R. 305.) This application was denied initially and on reconsideration. On June 14, 1989, a hearing was held regarding her claim for benefits. (R. 305–11.) On July 28, 1989, the ALJ issued a decision that Rucker was not "disabled" as defined by the Social Security Act ("SSA"). The ALJ found that Rucker suffered from obesity, bilateral patello femoral disease and possible tendinitis of the right arm. Although the ALJ found her unable to return to her past relevant work as an LPN, he found that she had the residual functional capacity ("RFC") for sedentary work. (R. 311.) On March 19, 1990, the Appeals Council affirmed the ALJ's decision. (R. 314–15.) On July 2, 1993, the district court affirmed the decision of the Secretary denying Rucker benefits. *Rucker v. Shalala,* IP 90–1372–C (S.D.Ind. July 2, 1993).

On April 10, 1992, Rucker reapplied for DIB and SSI. After initial and reconsideration denials, the claimant filed a timely request for a hearing on October 27, 1992. On May 18, 1993, a hearing was conducted. (R. 54–83.) On December 21, 1993, the ALJ issued a decision denying the claimant benefits. (R. 25, 28–43.) The Appeals Council denied two requests for reopening by Rucker. (R. 18–20.) Subsequently, Rucker filed this appeal, seeking judicial review of the Secretary's decision. On January 23, 1995, Plaintiff filed a brief in support of her appeal. On March 1, 1995, the Secretary filed a brief in opposition. On March 14, 1995, Plaintiff filed a reply brief.

## II. SECRETARY'S DECISION

"Disability" is defined by the Social Security Act as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C.

§ 423(d)(2)(A) (1988); *see also* 42 U.S.C. § 1382c(a)(3)(B) (1988 & Supp.1994).

In determining whether to grant disability benefits, the Secretary and the courts make a five-step inquiry:

(1) whether the claimant was prevented from performing any substantial, gainful activity;

(2) whether the claimant has a severe impairment or a combination of impairments preventing performance of any substantial gainful activity;

(3) whether the claimant's impairment meets or equals an impairment listed in the regulations, or whether the combination of the claimant's impairments meets or equals any listing;

(4) whether the claimant is unable to perform any of his of her past jobs; and

(5) whether the claimant is unable to perform any other work in the national economy in light of the claimant's age, education and work experience.

*See* 20 C.F.R. § 404.1520 (1994); *Bowen v. Yuckert*, 482 U.S. 137, 140–42, 107 S.Ct. 2287, 2290–91, 96 L.Ed.2d 119 (1987).

█ The claimant has the burden of establishing proof regarding steps (1) through (4) of the five step inquiry.[1] If those requirements are met, step (5) mandates that the burden then shifts to the Secretary to prove that the claimant is capable of performing work existing in the national economy in light of his or her age, education and past work experience. *Ray v. Bowen*, 843 F.2d 998, 1001 (7th Cir.1988); *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir.1987).

With regard to Rucker's request for SSI and DIB, the ALJ made the following findings:

1. Claimant met disabled insured status from April 7, 1988, until September 30, 1991.[2]

2. Claimant has not worked since April 7, 1988.

3. Although the claimant has severe impairments, they do not rise to the required level of the applicable Listings in 20 C.F.R. pt. 404, subpt. P, app. 1.

4. Claimant's subjective complaints are not credible.

5. Claimant has an RFC of medium and can perform her past relevant work.

6. Claimant is not disabled.

(R. 42.) Based upon these findings, the ALJ concluded that Rucker was not entitled to the requested DIB and SSI benefits.

### III. STANDARD OF REVIEW

█ In reviewing the Secretary's decision, the district court must determine whether the record as a whole supports that decision. 42 U.S.C. § 405(g) (1988); *Burnett v. Bowen*, 830 F.2d 731, 734 (7th Cir.1987). If the Secretary's findings are supported by substantial evidence in the record, the court must affirm unless there is an error of law. *Waite v. Bowen*, 819 F.2d 1356, 1360 (7th Cir.1987). Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Farrell v. Sullivan*, 878 F.2d 985, 990 (7th Cir.1989); *Burnett*, 830 F.2d at 734. Even if the case could have gone the other way, the court cannot decide new facts, reweigh the evidence, nor substitute its own judgment for that of the Secretary. *Scivally v. Sullivan*, 966 F.2d 1070, 1075 (7th Cir.1992); *Farrell*, 878 F.2d at 990. Neither may the court reconsider credibility determinations by the ALJ. *Prince v. Sullivan*, 933 F.2d 598, 601–02 (7th Cir.1991). Hence, a plaintiff's proof must show that no reasonable person, based

---

**1.** A claimant's failure to meet step (3)—*i.e.,* whether the impairment meets or exceeds a listed impairment—however, is not fatal and the inquiry continues. If steps (1), (2) and (4) are met, the claimant has established a prima facie case. *Ray v. Bowen*, 843 F.2d 998, 1001 (7th Cir.1988). An affirmative finding at step (3) results in a finding of disability. *Arbogast v. Bowen*, 860 F.2d 1400, 1403 (7th Cir.1988); *Yuckert*, 482 U.S. at 140–42, 107 S.Ct. at 2290–96.

**2.** The parties do not dispute the fact that Rucker met disability insured status until September 30, 1991. In order to have a claim for DIB, claimant must allege disability prior to termination of insured status. See *Orrick v. Sullivan*, 966 F.2d 368, 369 (8th Cir.1992); *Gonzalez v. Sullivan*, 799 F.Supp. 940, 941–42 (N.D.Ind.1992).

upon the record as a whole, could have found as the Secretary did.

## IV. DISCUSSION

### A. Overview

Rucker alleges the following conditions prevent her from working: (1) back, leg, knee and right hand pain; and (2) uncontrolled hypertension.[3] Although she suffers from thyroid disease, this disorder is effectively controlled through medication. (Pl.'s Br. at 5.)

Rucker alleges three reasons why the ALJ's decision is not supported by substantial evidence. First, the claimant contends that the ALJ's findings violated the doctrine of *res judicata.* (Pl.'s Br. at 10.) The basis of this argument is that the ALJ determined Rucker's RFC to be medium work, which allows her to return to her past work as an LPN. Rucker alleges that this conflicts with the decision on her previous claim. Although that prior decision also denied her disability benefits, Rucker's RFC was determined by the prior ALJ to be limited to sedentary work. Second, the claimant contends that the ALJ did not properly consider her allegations of subjective pain. (Pl.'s Br. at 13.) Finally, Rucker alleges that the ALJ incorrectly determined her testimony concerning her physical pain to be not credible. (Pl.'s Br. at 15.)

### B. Applicable Five Step Analysis

The ALJ conducted the appropriate five step analysis.

### Step One

At step (1), the ALJ found that the claimant has not performed any substantial gainful activity since she stopped working in 1988. Step (1) is found in favor of the claimant and this is not disputed by the parties.

### Step Two

At step (2), the ALJ found severe impairments regarding her alleged symptoms. Step (2) was found in favor of the claimant and the parties do not dispute this issue.

### Step Three

At step (3), the ALJ determined the applicable Listings to be 1.05, 9.09, 1.03, 1.09 and 4.03.[4] The parties do not dispute that these are the applicable Listings. Additionally, the parties do not dispute that the Plaintiff does not meet the required level of the listed impairments.

### Step Four

At step (4), the ALJ determined that the claimant could perform her past relevant work as an LPN. In order to make this determination, the ALJ concluded that the claimant had an RFC for medium level work activity. Plaintiff alleges that the ALJ was precluded by the doctrine of *res judicata* from making any determination as to her RFC. Plaintiff argues that, based upon a previous decision concerning her RFC, the ALJ is limited to finding that she only has an RFC to perform sedentary work.

### Step Five

Although a finding at step (4) that the claimant can return to her past relevant work is sufficient to deny the claimant benefits, the ALJ continued to step (5). At step (5), the ALJ determined that the claimant possesses skills transferable to the position of medical assistant. The claimant disputes this finding. Plaintiff's arguments regarding the ALJ's findings at steps four and five of the inquiry will be addressed in turn.

### C. *Res Judicata*

*Res judicata* is comprised of two concepts: claim preclusion and collateral estoppel. Collateral estoppel is commonly referred to as issue preclusion. 18 Charles A. Wright,

---

**3.** Hypertension is defined as high blood pressure. Stedman's Medical Dictionary 676 (William H.L. Dornette et al. eds. 1982).

**4.** The applicable Listings referenced by the ALJ are found in 20 C.F.R. pt. 404, subpt. P, app. 2. Listing 1.05 concerns disorders of the spine. Listing 1.03 provides the requirements for arthritis of a major weight bearing joint. Listing 1.09

describes the requirements for loss of function due to degenerative changes associated with vascular or neurological deficits in both hands, both feet, or, one hand and one foot. The ALJ's reference to Listing 9.09 appears to be a typographical error. In referring to Listing 9.09, it appears that the ALJ intended to refer to Listing 10.10 which deals with obesity.

ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE, § 4301 to 4500 (1981); *see Ross v. Int'l Bhd. of Elec. Workers,* 634 F.2d 453, 457 n. 6 (9th Cir. 1980). This terminology leads to two confusing doctrines that are entirely separate, but comprise the doctrine of *res judicata.* To help clarify this doctrine, it is better to use consistent and descriptive terms such as claim preclusion and issue preclusion. Jay Carlisle, *Getting a Full Bite of the Apple: When Should the Doctrine of Issue Preclusion Make an Administrative or Arbitral Determination Binding in a Court of Law,* 55 FORDHAM L.REV. 63, 66 (1986). When dealing with *res judicata,* the best approach is to separate claim preclusion as embodying one concept, and issue preclusion as another. The term *res judicata* should be reserved for reference to both concepts collectively. RESTATEMENT (SECOND) OF JUDGMENTS § 74 (1982).

■ The goal of claim preclusion is to avoid multiple suits on identical claims. Claim preclusion has the effect of extending a judgment to all issues relevant to the claim between the same parties, whether or not raised at the trial. Issue preclusion bars re-litigation of issues actually adjudicated and essential to the judgment in prior litigation between the same parties or their privies. 18 WRIGHT, MILLER & COOPER, *supra,* § 4301 to 4500.

■ The Supreme Court recognizes claim preclusion as a term limited to the concepts of merger and bar,[5] and recognizes issue preclusion as an entirely separate doctrine. 18 WRIGHT, MILLER & COOPER, *supra,* § 4402 (citing *Allen v. McCurry,* 449 U.S. 90, 91–94, 101 S.Ct. 411, 413–15, 66 L.Ed.2d 308 (1980)); *see also Brown v. Felsen,* 442 U.S. 127, 139 n. 10, 99 S.Ct. 2205, 2213 n. 10, 60 L.Ed.2d 767 (1979) (superseded by statute on other grounds). "Claim preclusion is the doctrine that once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different

theories or if seeking a different remedy." Carlisle, *supra,* at 66 (quoting *Giacamazzo v. Moreno,* 94 A.D.2d 369, 464 N.Y.S.2d 485, 486 appeal denied, 60 N.Y.2d 558, 469 N.Y.S.2d 1026, 457 N.E.2d 809 (1983)). Issue preclusion involves a second action that is a different cause of action from the previous suit, but precludes re-litigation of issues fully adjudicated in the prior suit. Marjorie A. Silver, *In Lieu of Preclusion: Reconciling Administrative Decisionmaking and Federal Civil Rights Claims,* 65 IND.L.J. 367, 370 (1990) (quoting *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979)). Issue preclusion does not extend to matters which were not fully litigated in the prior suit. 18 WRIGHT, MILLER & COOPER, *supra,* § 4416, at 136.

Three distinct differences can be drawn between claim preclusion and issue preclusion:

(1) claim preclusion prevents the re-litigation of entire claims, while issue preclusion prevents the re-litigation of particular issues;

(2) claim preclusion applies whether or not there has been a full adversary contest on the prior matter, while issue preclusion operates only if the issue in question has previously been fully litigated;

(3) claim preclusion precludes subsequent suits on the same cause of action, while issue preclusion prevents re-litigation of a particular issue in later suits on any cause of action.

JACK H. FRIEDENTHAL ET AL., CIVIL PROCEDURE, § 14.11, at 672 (1985).

Specifically, the concept of claim preclusion was originally developed in *Cromwell v. County of Sac,* 94 U.S. 351, 352, 24 L.Ed. 195 (1876). The concept is succinctly described as follows: A court of competent jurisdiction must have entered a final judgment on the merits regarding a cause of action. *Id.* The result is that the parties and their privies are bound to all matters decided or which could have been decided. *Id.* The court's deter-

---

5. Judgment is the full measure of relief regarding a claim between two parties on the same claim. When a plaintiff obtains a favorable judgment, his claim "merges" into the judgment. If a defendant obtains favorable relief, the plaintiff's claim is extinguished, and the judgment acts as a "bar." 18 WRIGHT, MILLER & COOPER, *supra,* § 4402, at 7.

mination will bar any other cause of action based on the transaction unless there was fraud or some other invalidating circumstance. *Id.*

Issue preclusion, on the other hand, arises when the following factors are present: (1) the issue was actually litigated in a prior proceeding; (2) there was a full and fair opportunity to litigate the issue at that time; (3) the issue was actually decided in the first action; (4) a valid, final disposition of the issue in question was made on the merits; (5) it was necessary to decide the issue in the first case; (6) the issue occupied a high position in the first case; (7) the later litigation is between the same parties or parties that are bound by the previous litigation; (8) the issue was foreseeably important at the time of the first case;[6] and (9) there are no special considerations, such as fundamental fairness, which deny application of issue preclusion rules. 18 WRIGHT, MILLER & COOPER, *supra*, § 4416, at 138.

■ The Supreme Court has authorized application of *res judicata*, both claim and issue preclusion, in administrative proceedings. *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966) (superseded by statute on other grounds). At common law, *res judicata* was not applied in administrative proceedings because such proceedings were seen as strictly a function of the executive branch, not the judicial or legislative. *Pearson v. Williams*, 202 U.S. 281, 285, 26 S.Ct. 608, 610, 50 L.Ed. 1029 (1906). *Contra Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381,

402–03, 60 S.Ct. 907, 916–17, 84 L.Ed. 1263 (1940).

The Restatement (First) of Judgments did not deal with *res judicata* in administrative proceedings. The Restatement (Second) of Judgments specifically examines *res judicata* at section 83. Although *Utah Construction*, authorizes the use of *res judicata* in administrative proceedings, 384 U.S. at 421–22, 86 S.Ct. at 1559–60, it will only apply in certain circumstances. 2 KENNETH C. DAVIS & RICHARD J. PIERCE, JR., ADMINISTRATIVE LAW TREATISE § 13.3, at 248–50 (3rd ed. 1994). In general, the more closely an administrative proceeding resembles a court proceeding, the more likely *res judicata* principles will apply. *Id.* "The courts have experienced difficulty in deciding whether, and to what extent, *res judicata* applies to SSA decisions." *Id.* at 251. However, 20 C.F.R. §§ 404.905, 404.988 and 404.989 are SSA rules which do apply *res judicata* principles.

■ "[A] valid and final adjudicative determination by an administrative tribunal has the same effects under the rules of *res judicata*, subject to the same exceptions and qualifications, as a judgment of the court." Elizabeth S. Ferguson, Note, *Untangling "Operation Common Sense": Reopening and Review of Social Security Administration Disability Claims*, 87 MICH.L.REV. 1946, 1963 n. 99 (1989) (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 83(1) (1982)). In order for *res judicata* to apply to social security determinations, the proceeding must contain all the elements of an adjudication. Ferguson, *supra*, at 1946. This includes adequate no-

---

**6.** In conjunction with foreseeability, some courts formerly indicated that issue preclusion would apply only if the issue was high up in the "logical hierarchy in the second case." 18 WRIGHT, MILLER & COOPER, *supra*, § 4416, at 138. This concept was developed in an opinion by Judge Learned Hand, *The Evergreens v. Nunan*, 141 F.2d 927 (2d Cir.), *cert. denied sub nom. Evergreens v. Commissioner*, 323 U.S. 720, 65 S.Ct. 49, 89 L.Ed. 579 (1944), and became known as the *Evergreens* Rule. 18 WRIGHT, MILLER & COOPER, *supra*, § 4424, at 227. *Evergreens* held that only matters that are ultimate facts in the second case are subject to issue preclusion. FRIEDENTHAL ET AL., *supra*, § 14.10, at 666. The court in *Evergreens* distinguished between mediate and ultimate facts, as did the Restatement (First) of Judgments. RESTATEMENT (FIRST) OF JUDGMENTS § 68 (1948). How-

ever, the Restatement (Second) of Judgments does not distinguish between mediate and ultimate facts. RESTATEMENT (SECOND) OF JUDGMENTS § 28(5)(b) (1982). While jurisdictions today still apply the policies of the *Evergreens* case, they do not distinguish between ultimate and mediate facts. Courts will not usually apply the *Evergreens* Rule, and simply ignore it. 18 WRIGHT, MILLER & COOPER, *supra*, § 4424, at 227. Jurisdictions today generally adopt the Restatement (Second) of Judgments approach. Under this approach, issue preclusion will apply in a subsequent suit if it was foreseeable at the time of the first action and necessary to its judgment. *See Laughlin v. United States*, 344 F.2d 187, 191 (D.C.Cir.1965); *Hyman v. Regenstein*, 258 F.2d 502, 510–11 (5th Cir.1958), *cert. denied*, 359 U.S. 913, 79 S.Ct. 589, 3 L.Ed.2d 575 (1959).

tice, the right to present evidence and opportunity to rebut it, a statement of the issues of law and fact and a rule of finality. *Id.* (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 83(2) (1982)).

Courts have had difficulty deciding under what circumstances administrative claim and issue preclusion apply. 2 DAVIS & PIERCE, *supra,* § 13.3, at 251. Claim preclusion in administrative proceedings prevents re-litigation of a claim previously decided. A caveat when applying administrative *res judicata* is that the doctrine is applicable if the previous claim was decided with the elements of adjudication. *Id.* at 250–51. For example, if there was a full and fair opportunity to present evidence, rebut evidence and present arguments in an administrative proceeding, traditional claim preclusion principles will apply. *Id.* at 250. However, this requires a case by case analysis. *Id.* Because SSA claims do not coincide precisely with judicial trials, courts have had additional difficulty in applying claim preclusion in SSA cases. *Id.*

■ Once a claim is fully adjudicated in an SSA case, claim preclusion prevents that specific claim from being raised again, for the time period covered by that adjudication. However, there is an exception. Under certain circumstances, a case may be reopened and a new determination may be made. 20 C.F.R. §§ 404.988, 404.989. However, this only applies if there is new and additional evidence presented for the time period that was in question during the initial adjudication. *Id.* The time period for which there is a preclusive effect of the original determination begins with the alleged onset date of disability and runs through the final determination of the Secretary, which is ordinarily

the Appeals Council's affirmation of the ALJ's decision.

■ In general, issue preclusion prevents a party or their privies from re-litigating issues in a second claim, even if the second claim is entirely unrelated to the claim in which the issues were originally decided. In the administrative context, issue preclusion applies differently than it does in a judicial setting.[7]

■ When there is a reopening by an ALJ, whether express or *de facto,*[8] the ALJ is precluded from re-determining issues which were fully adjudicated in the prior decision. However, there is one significant exception. If the ALJ can point to some evidence as to why an issue should be decided differently, issue preclusion will not prevent the ALJ from changing a previous determination.

■ If an entirely new SSA claim is brought, issue preclusion will not prevent a new determination of issues decided in a previous suit. Issue preclusion only prevents relitigation of issues within the time period of each claim. It does not prevent relitigation of issues, such as a claimant's residual functional capacity, in subsequent time periods, because such would not be *re* -litigation at all. This means that when a claimant brings a new claim, issues in a current claim are decided independently of the previous claim. In this context, such a previous determination has no weight in a subsequent case. *Reynolds v. Bowen,* 844 F.2d 451, 453–54 (7th Cir.1988). This is so because it is undoubtedly possible that a claimant's ability to perform her past relevant work changes over time.[9] *Pulliam v. Sullivan,* 769 F.Supp.

---

7. In the administrative context, issue preclusion can pose many problems when one must determine the effect one agency's finding has upon another agency. 2 DAVIS & PIERCE, *supra,* § 13.4, at 260–61. Fortunately, such is not an issue in this case.

8. A claim may be reopened in accordance with the regulations in one of two ways. First, the ALJ may expressly reopen a prior claim by merely stating in the report that good cause exists to justify a reopening. The ALJ may also *de facto* or constructively reopen a prior claim. The usually occurs when the ALJ reconsiders the facts of the prior claim without expressly stating that

prior claim is being reopened. It may also occur when new material evidence is considered relative to a prior claim. In such a case, the theory is that, in considering the prior claim, the ALJ has *de facto* found good cause to reopen said claim. *See, e.g., Taylor ex rel. Peck v. Heckler,* 738 F.2d 1112, 1114–15 (10th Cir.1984); *McGowen v. Harris,* 666 F.2d 60, 65 (4th Cir. 1981); *Wilson v. Califano,* 580 F.2d 208, 212 (6th Cir.1978).

9. In *Pulliam,* the court noted that a claimant's condition could improve over time. 769 F.Supp. at 1477. The court found that the ALJ did not err in determining that within 3½ years, the

1471, 1477 (N.D.Ill.1991). In general, a claimant's ability to work is not constant. "[R]es judicata effects as to transitory matters such as health do not operate in a subsequent case." *Helmold v. Shalala*, No. 93 C 1897, 1994 U.S.Dist. LEXIS 3276, at \*15–16 (N.D.Ill. Mar. 18, 1994) (citing *Pulliam*, 769 F.Supp. at 1477).[10]

### D. Plaintiff's *Res Judicata* Argument at Step Four

Rucker alleges that the ALJ was bound in this current proceeding to the previous finding concerning her ability to perform her past relevant work. As noted above, at the previous hearing, it was determined that the claimant could not perform her past relevant work of an LPN. It was also determined that the claimant's RFC was for sedentary work. It was also determined that the work of an LPN is considered medium level exertion; the parties do not dispute this finding.[11] It is clear from a review of the record in this second claim proceeding that the ALJ took into consideration all of the evidence in the record. The ALJ concluded that Rucker has retained the capacity to perform medium level work. Consequently, she can perform her past relevant work under this theory because the job of LPN is classified as medium level work.

According to 20 C.F.R. § 404.988(b), a claim for Disability Insurance Benefits may be reopened within four years of the initial determination for good cause shown.[12] 20 C.F.R. § 404.989(a)(1) indicates that good cause is new and material evidence. These

two sections construed together indicate that if new and material evidence is presented, a claimant's case can be reopened. The record does not indicate that the ALJ was reopening the previous decision concerning claimant's disability. However, many circuits recognize a *de facto* or constructive reopening when an ALJ reviews a second application for benefits in light of new evidence. *Taylor ex rel. Peck v. Heckler*, 738 F.2d 1112, 1114–15 (10th Cir. 1984); *McGowen v. Harris*, 666 F.2d 60, 65 (4th Cir.1981); *Wilson v. Califano*, 580 F.2d 208, 212 (6th Cir.1978).

The Appeals Council explained that the ALJ took into consideration evidence submitted in the prior proceeding. (R. 19.) The claimant originally, and in her new claim, requested a disability onset date of April 1988. These factors support a *de facto* reopening of the previous decision. *See Peck*, 738 F.2d at 1114–15. It is not essential to a finding of *de facto* reopening that a formal petition of reopening be made. *Purter v. Heckler*, 771 F.2d 682, 694 (3rd Cir. 1985). Although the factors mentioned are indicative of a *de facto* reopening, they are not dispositive of this issue.

The record indicates that the ALJ limited his consideration of Plaintiff's disability claim to the period beginning March 19, 1990. (R. 29.) It appears that the ALJ based this limitation upon the claim preclusion effects of the determination of the Plaintiff's first claim for benefits. Therefore, the time periods concerning Plaintiff's applica-

---

claimant could have increased functional capacity. *Id.* The court is not concluding that the alleged causes of disability are similar. The court is merely recognizing that a claimant's condition can improve with time.

10. In *Helmold*, the court clearly distinguished between items which change with time such as health, and characteristics that do not. For example, the court noted that transferability of skills from previous job are unlikely to change over time. *Helmold*, 1994 U.S.Dist. LEXIS 3276, at \*15–16.

11. Plaintiff testified that her particular previous work required heavy exertion. However, Rucker does not dispute that the job an LPN, as generally found in the economy, requires only a medium level of exertion.

12. There is no issue regarding a reopening for good cause concerning the SSI claim. 20 C.F.R. § 416.1488 indicates that a claim may be reopened within two years of an initial determination for good cause shown. The initial determination of the first SSI claim was September 21, 1988, and the instant claim was not filed until April 10, 1992. (R. 94.) Accordingly, Plaintiff's SSI claim may not be reopened, even for good cause, because more than two years passed between the initial determination of the first claim and the filing of the second claim. Therefore, Plaintiff's claim for SSI benefits is an entirely separate claim, wholly unrelated to the first determination; accordingly, issue preclusion in no way applies to the ALJ's SSI determination in this case.

tions for benefits do not actually overlap. Furthermore, the ALJ stated that he was only considering the current claim for benefits beginning March 19, 1990, because of the finality of the previous determination concerning disability status. (R. 56–57.) Because of these factors, the court finds that the ALJ was not considering the new evidence in light of the previous claim, and a *de facto* reopening did not occur in this case. *See Pulliam,* 769 F.Supp. at 1477.

■ The importance of finding that the ALJ's consideration of new evidence was not a reopening of Plaintiff's previous claim for DIB is twofold. First, if Plaintiff's previous claim was reopened, this court would still have the power to review subsequent findings by the ALJ regarding the merits of the case. *Purter,* 771 F.2d at 696. Second, if it was a reopening, the prior determination that Rucker could not do her past relevant work would have a preclusive effect unless the ALJ could point to some evidence indicating that her condition had improved. *See Reynolds,* 844 F.2d at 451; *Pulliam,* 769 F.Supp. at 1477. In other words, if it is not a reopening, RFC is considered independently of any previous claims, and previous RFC determinations are deemed irrelevant. *Reynolds,* 844 F.2d at 454. If it was a reopening, the Secretary would have to demonstrate why a change from the previous RFC is justified.

■ Because the alleged onset date of disability is March 19, 1990, issue preclusion does not apply. The issue of Rucker's alleged disability from that onset date has never been litigated. Because the requirements of issue preclusion are not met, *res judicata* principles cannot apply in this case. Therefore, the ALJ was not precluded from finding Rucker capable of performing her past relevant work.

■ The result of *res judicata* analysis of Rucker's present claim is as follows. The previous ALJ's findings that Plaintiff's

RFC limited her to sedentary work does not preclude the ALJ in the instant case from making an independent current RFC finding. Consequently, issue preclusion does not apply in the instant case. Furthermore, claim preclusion applies in the instant case to preclude Plaintiff from seeking benefits for any period prior to March 19, 1990, the day the Secretary's decision denying Plaintiff's prior claim became final.

Because issue preclusion does not apply in the case at bar, the ALJ was not precluded from making a finding at step (4) that Plaintiff had an RFC for medium work. The ALJ was also not precluded from further finding that Rucker could perform her past relevant work as an LPN. The court will now consider whether the ALJ's determination at step (4) is supported by substantial evidence in the record. The court will address Plaintiff's allegations of disability in turn.

### E. The ALJ's Step Four Determination That Plaintiff Can Return to Her Past Relevant Work

#### 1. Back, Leg, Knee and Right Hand Pain

Rucker alleges that she has no cartilage in her legs and that she experiences great difficulty when standing or sitting. (R. 29.) She also alleges sciatica [13] in her left leg, a bulging disc, nerve compression and severe pain. (R. 29.) Additionally, Plaintiff alleges pain and weakness in her left arm. She further complains of not being able to lift a five pound bag of sugar with her right arm.

Although Rucker alleges pain and weakness in the upper right extremity, Louis J. Calli, Jr., M.D., could not find anything objectively wrong with her. (R. 441.) He also noted that she had a normal EMG [14] of the right upper extremity. (R. 441.)

X-rays of the claimant's knees revealed osteoarthritic changes, but they were not considered severe. (R. 432.) She was found

---

13. Sciatica is defined as pain in the lower back and hip radiating down the back of the thigh into the leg. This is usually due to a herniated lumbar disc or sciatica neuritis. STEDMAN'S MEDICAL DICTIONARY 1262 (William H.L. Dornette et al. eds., 1982). Neuritis is inflammation of a nerve. *Id.* at 945.

14. EMG is an abbreviation for electromyogram. An electromyogram is a graphic representation of the electric currents associated with muscular action. STEDMAN'S MEDICAL DICTIONARY 451 (William H.L. Dornette et al. eds., 1982).

to have no tenderness in her back, nor any limitation regarding back movement. (R. 492.) The record indicates that she has normal motor strength and no loss of grip strength. (R. 475, 490.)

## 2. Hypertension

Plaintiff further alleges uncontrolled hypertension as a source of disability. Medical reports do reveal that the claimant has a history of high blood pressure readings.[15] However, recent medical reports indicate that her blood pressure can be controlled. After a few hours during a recent hospital visit, her blood pressure was recorded as 120/60. (R. 519.) This was deemed "excellent" by Dr. Carroll. (R. 579.)

## 3. The ALJ's Step Four Analysis

 Based upon these facts, the ALJ concluded that Plaintiff's allegations of limited ability to work were inconsistent with the medical reports. The ALJ correctly determined that Rucker's testimony was not credible so as to impose additional limitations on claimant's ability to do medium level work. Rucker alleges that the ALJ did not properly consider her subjective allegations of pain. (Pl.'s Br. at 13–15.) The ALJ cannot dismiss subjective complaints solely because they are not supported by any objective medical evidence. 20 C.F.R. § 416.929(c). Furthermore, 20 C.F.R. §§ 404.1529 and 416.929 indicate that the ALJ must consider all symptoms when determining disability. The court finds that the ALJ properly took into consideration all available evidence.[16]

**15.** The record shows the following blood pressure readings on the specified dates: (1) 2/11/92—182/108; (2) 1/18/92—162/102; (3) 11/11/91—162/108. (R. 459.)

**16.** The ALJ took into consideration, among other medical findings, the following doctors' reports: Dr. Calli's report which included a normal EMG of Rucker's upper right extremity; Dr. Marshall Poor's report concerning pain and motor strength; Dr. May Mahern's report which indicated that the claimant had no end organ damage due to hypertension or congestive heart failure. (R. 34–37.) The ALJ also noted other findings such as normal neurological examinations, weight changes and blood pressure readings. (R. 35–40.)

The ALJ simply found that her allegations were not credible. An ALJ's credibility finding is entitled to significant deference. *See Pope v. Shalala*, 998 F.2d 473, 487 (7th Cir. 1993). Because the ALJ's credibility findings were not patently wrong, his decision that Plaintiff was not disabled must be sustained. *See Kelley v. Sullivan*, 890 F.2d 961, 965 (7th Cir.1989). Furthermore, as the ALJ properly noted, symptoms alone are not a sufficient basis upon which to make a finding of disability.[17] 20 C.F.R. §§ 404.1529, 416.929. Medical findings or signs must support a conclusion that the symptoms complained of support a finding of disability. *Id.*

In conjunction with the ALJ's credibility determination, Plaintiff alleges that the ALJ relied on wrongful grounds for denying her claim. (Pl.'s Br. at 15.) Specifically, Plaintiff alleges that the ALJ relied upon his own medical assessments of the claimant's medical conditions. The court finds no support for Plaintiff's allegations; rather, the court finds that the ALJ's findings are supported by ample medical and doctors' reports in the record.

Based upon the evidence, it was not error for the ALJ to conclude that Rucker could perform medium level work and that she could return to her past relevant work. Because the claimant did not meet step (4) of the applicable five step inquiry, Plaintiff's claim was correctly denied. However, the ALJ additionally found, at step (5) of the inquiry, that the claimant could perform other work available in the economy.

**17.** Symptoms, signs and medical findings are distinguishable. Symptoms are defined as a claimant's description of mental or physical impairments. 20 C.F.R. §§ 404.1528(a), 416.928(a). Signs are distinguished as anatomical, physiological or psychological abnormalities which can be observed apart from a claimant's symptoms. 20 C.F.R. §§ 404.1528(b), 416.928(b). Medical Findings can be loosely described as anatomical, physiological or psychological phenomena shown by medically acceptable diagnostic techniques. For example, x-rays or psychological tests. 20 C.F.R. §§ 404.1528(c), 416.928(c).

### F. ALJ's Step (5) Determination That Plaintiff Can Perform Other Work Available in the Economy

██ The ALJ properly relied upon a vocational expert, Ray O. Burger ("Burger"), when determining the claimant's ability to do work in the economy at step (5). Burger determined the claimant's past work as an LPN to require medium level exertion. Burger then testified, through interrogatories, that Rucker could return to her past relevant work based upon the ALJ's finding that Rucker had an RFC to perform medium work.

██ In the alternative, Burger considered Rucker's ability to do work in the national economy at the "light" exertional level.[18] Burger found that Rucker's past work as an LPN provides her with skills transferable to the position of medical assistant. Because, according to Burger, there are 5,000 medical assistant jobs in the economy, there are a sufficient number of jobs available which Rucker can perform. Therefore, the ALJ's finding of not disabled was appropriate at step (5) as well. Plaintiff's reliance upon 20 C.F.R. pt. 404, subpt. P, app. 2, § 201.00(h) is not appropriate to nullify the ALJ's finding of transferability of skills at step (5). (Pl.'s Reply Br. at 3–5.) Section 201.00(g) takes into consideration claimants who have no transferable skills and are limited to sedentary work. Both of these assumptions are incorrect in the instant case. The ALJ concluded, based upon Burger's testimony, that an LPN does possess skills transferable to the job of medical assistant. Furthermore, as noted, the record does not support a finding that the claimant is limited to sedentary work.

██ Plaintiff incorrectly argues that Burger did not have enough medical evidence upon which to base his opinion concerning her transferability of skills. (Pl.'s Reply Br. at 8.) The interrogatories given to Burger instructed him to take into consideration the claimant's age, education, work experience and RFC. (R. 557.) The interrogatories further instructed Burger to take into consideration the claimant's impairments by indicating that the claimant was limited to medium work or, in the alternative, light work. (R. 557, 560.) Because the questions posed to Burger accurately reflected Plaintiff's condition, they are probative of the skills the claimant possesses. *See Loehmann v. Shalala,* No. 92 C 4386, 1994 U.S.Dist. LEXIS 813, at *31 (N.D.Ill. Jan. 27, 1994).

A finding by the ALJ at step (5) was not necessary. Claimant's failure to satisfy step (4) because she is able to perform her past relevant work of an LPN is sufficient to deny her claim for benefits. However, the court finds that the ALJ's decision at step (5) was correct as well. The ALJ's correct finding at step (5) is sufficient to deny the claimant benefits by itself. Based upon the evidence it was not error for the ALJ to conclude that there are jobs that Rucker can perform in the economy. Because the Secretary met her burden at step (5), Plaintiff's claim was correctly denied.

## V. CONCLUSION

The court finds substantial evidence in the record that the Plaintiff is not entitled to DIB or SSI benefits. Plaintiff has satisfied steps (1) and (2). The court finds that although the claimant has severe impairments at step (2), they do not rise to the required level of the applicable Listings at step (3). The court further finds that there is substantial evidence supporting the ALJ's determination that Plaintiff has not satisfied step (4), and can return to her past relevant work. This alone is sufficient to deny Rucker's claim for DIB and SSI benefits. Furthermore, in the alternative, the Secretary has met her burden at step (5) by demonstrating that there are sufficient jobs in the economy that the claimant can perform in light of her age, education and work experience. Consequently, there exists substantial evidence to support the Secretary's decision denying

---

**18.** "Light" work is different from "sedentary" work. Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. 20 C.F.R. § 404.1567(b). "Sedentary" work is a lower level of work capacity than "light". Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting articles such as docket files, ledgers and small tools. 20 C.F.R. § 404.1567(a).

Plaintiff's claim for DIB and SSI benefits. Accordingly, the Secretary's decision denying Plaintiff SSI and DIB benefits is **AF-FIRMED.**